My name is David Hoffer. I represent the United States in this appeal. Your Honors, we're here because Defendant Nico Defterios was sentenced to one month in prison for a massive $4 million bank fraud, his third bank fraud conviction. Because this is an appeal of a sentencing departure, there is a potential issue regarding the standard of review under the new PROTECT Act, which changed the standard for reviewing sentencing departures from abusive discretion to de novo. I say it's a potential issue, Your Honors, because if the court finds, as the government contends, that the district court abused its discretion, then this court need not reach the issue of whether the de novo standard of review applies. If this court finds that the district court did not abuse its discretion, then this court reaches the issue of whether the de novo standard applies, and the government argues that the court should review the departure de novo. But as I say, when the government noticed this appeal, the standard of review was abusive discretion, and the government contends that the district court did abuse its discretion in sentencing the defendant to just a single month. Delay in two prosecutions is an ordinary part of the fabric of criminal proceedings. A defendant cannot be prosecuted immediately after the government learns of his crime. There's time that's necessary to investigate the offense. That's what happened here, at the very tail end of the Paulus Verdi's fraud prosecution, just before the sentencing. The criminal conduct in the Hastert Gardens fraud was completed, and the government began to investigate it. The district court apparently assumed that in any such case where there is successive prosecution, the defendant is entitled to a departure because the theoretical combined sentence would be less than the sentence for the two offenses prosecuted separately. The district court said that it felt called upon to depart, and that although the sentence was not fair, the defendant was entitled to take advantage of what the court called the math of the guidelines. The court also called that the equations and equivalencies. But, Your Honors, this is not a mathematical calculation. Something more is required. Under Martinez, the defendant must show that the successive prosecution causes unfair prejudice. And other courts have held that this unfairness occurs where the delay in bringing the second prosecution was longer than was necessary for the government to complete its investigation. Or, where the delay was in bad faith, that is, intended by the government to multiply out or double the sentence. Counsel, we can't make that determination here, can we? Because of the fact that the district court failed to conduct a hearing and hear testimony from the case agent and perhaps an AUSA on what the status was of the Gardens prosecution. That's exactly right, Your Honor. Here, the district court did not inquire into the reasons for the delay and the circumstances surrounding it. And is it the government's position that that failure to hold a hearing in order to resolve this key factual issue was an abuse of discretion? It is, Your Honor. That is the government's contention. The government in defense both proffered testimony. Even the probation officer asked the court to make additional inquiry. But the district court declined to do so. And the government is asking this court to vacate the sentence and remand for consideration of the reasons and circumstances of the successive prosecutions in this case. Your Honor, unless the court has more questions, I would like to reserve a couple of minutes for the remainder of my time, which is more than that, for rebuttal. The only question I have for you at this point, Mr. Hoffer, is, as I understand the factual record, there was a different assistant assigned to the Gardens investigation. But that at some point in the plea negotiations with Mr. Defterios' counsel, the AUSA handling the Palace of Verities investigation suggested that the government wanted to wrap this whole thing up. And so if he wanted to plead guilty to the second, or I guess it would be his third matter, the government was prepared to negotiate along those lines. But that for financial reasons or whatever, Mr. Defterios' lawyer was unwilling or unable to conduct those negotiations. Is that right? That is correct, Your Honor. Of course, the reasons for that are not clear. And that's another thing that the court could have looked into but did not. The government contends that the defendant could have obtained court-appointed counsel if that was what was necessary. That is what the defendant did in the Hastert Gardens prosecution, where the defendant had court-appointed counsel. So at least from that fact, I guess we can assume that the government knew enough about the Hastert Gardens investigation that it was willing to deal on it, which suggests to me that there had been some investigation done. Yes, Your Honor. There had been some investigation that started. The fraud ended at the end of 1998. And there had been some investigation. And, of course, the case was a significant one. There had been some notoriety regarding the matter of Hastert Gardens. And so the government brought to the defendant the option of resolving that matter at the same time. And the defendant declined to do so. So one can easily see where a defendant might not be willing to deal a $4 million bank fraud when he's only been charged with a $250,000 bank fraud. Okay. Thank you. If you want to reserve the rest of your time, we'll hear from Mr. Harris. Thank you, Your Honor. May it please the Court, William Harris, on behalf of Mr. Defterios. First of all, just a brief note on the PROTECT Act. I believe that applying, assuming you reach that issue, application of the PROTECT Act, and particularly the Feeney Amendment to Mr. Defterios, would raise some constitutional problems under Article I, Section 9, ex post facto problems and attainder problems. Because the Feeney Amendment was obviously aimed at reining in district courts and restricting their discretion to depart downward, as occurred to Mr. Defterios. And applying that to somebody like Mr. Defterios, whose case was pending at the time of the passage of that, I believe, first of all, would be an ex post facto problem. That's an interesting argument, Mr. Harris. Are you suggesting that because the standard of review changes from abuse of discretion to de novo review, and therefore we assume that the Court of Appeals may take some action that is more harmful to Mr. Defterios, that that implicates the ex post facto problem? Exactly. And the key case is when we exercise our de novo review and reduce his sentence from one month to nothing, would your argument still be the same with regard to the change in the standard of review? It seems that under Lindsay v. Washington, which was the U.S. 1937 U.S. Supreme Court case cited in my 28 J letter, the Alfaro case, a restriction of the sentencing discretion of the district court constitutes an ex post facto violation, irrespective of the actual results to that defendant. But don't we look for ex post facto analysis to prejudice to the defendant from the application of the change in the law? My question suggests that there might be a scenario where your client would actually be favorably impacted by this change. And we don't really know because you can't know what we're going to do on de novo review if we apply the provisions of the PROTECT Act. That's true, but the government in this case is challenging a one-month sentence, and so it's unlikely that Mr. Deferios is going to do better than that. They're dissatisfied with it. The PROTECT Act was designed to restrict the sentencing discretion of district courts. But what if we exercise our de novo power to simply vacate the sentence and remand for the hearing that the government is asking for, for a factual determination as to where the Hastert Gardens investigation stood at the time? Because then Mr. Deferios is in a worse position because he has to undergo back to the district court, to the crucible of litigation. And right now … There have been relevant facts to the sentencing. How is he harmed by that? Because right now he's done. He's a free man. I mean, assuming we get past this appeal, he goes on with his life. He's harmed by having to go back into district court and be exposed to potentially a 24-month sentence, which is what the government was asking in this case. So that's the harm, having to litigate again. The district court might find as the basis of those facts that it was absolutely correct in its original sentence, that the government, as I suggested in my questions of Mr. Hoffer, knew enough about the second prosecution in order to deal, and therefore it was not improper to group the second fraud with the first, and the sentence stands. And it seems to me your client's … The only harm you can articulate is, well, I had to go back to court. Right. And I think that would be the … That would be the correct … … harm for purposes of application of the ex post facto clause. And you have a case that supports that. In an analogous context of double jeopardy, the fact that you have to litigate again and to be exposed … That's a … … is not implicated, is it? No. This is an ex post facto issue. Now you're mixing different provisions of different parts of the Constitution. Let's stick with ex post facto. I would suggest that under Washington, Lindsay v. Washington, where you restrict the sentencing discretion of the district court, and you apply that to somebody retrospectively, like Mr. Defterios, and that forces him to go back and be exposed to more time, whether or not that time is actually sentenced and ordered, that is harm. That hails him back into court with the more worry, more expense, more ulcers about whether or not he's going to have to go to jail. He already served the one month. What if the court was wrong in its application of the guidelines? It seems to me that if we accept your argument here, taken to its logical conclusion, then he wins simply because the law of the standard of review has changed, even if the sentencing court was wrong in imposing only one month of additional incarceration. He wins under the old standard. I mean, it's not a lawless win. It's a win under the abuse of discretion. Excuse me. Pardon me? Old standards under the sentencing guidelines. Under the abuse of discretion standard under Kuhn. I mean, we're arguing for the law as it was before the Feeney Amendment. My point is that the Feeney Amendment effects an ex post facto problem, and in addition, because it's aimed at people like Mr. Defterios, if you apply it retrospectively, you have an attainder problem also, because there's a specified class of people like Defterios that this was aimed at. It was obviously aimed at restricting downward departures. But getting to the merits of this, the government is asking for a remand for two reasons. There's two reasons why the remand is not necessary. First of all, the hearing, the further hearing was unnecessary because the government proffered what the testimony would be. And Judge Taylor accepted the proffer. He accepted the fact that the Haster investigation was in its infancy at the time Pellis Perdue was sentenced. He accepted that Haster was difficult to unravel. And he accepted the fact that there was no sentencing manipulation or bad faith on the part of the government. So the problem is, is that Judge Taylor was in the middle of another trial. The prosecutor made a proffer. Judge Taylor accepted the proffer at full value. And the problem here seems to be that the government won't take yes for an answer. Why isn't it an abuse of discretion? Because it's not necessary. The hearing was not necessary. No, why isn't it an abuse of discretion to sentence him to one month? Well, it was a proper departure theory. There were facts taking it outside of the guidelines. And both of those. It seems a very mechanical exercise. It says the math is in your favor. That's not exercising discretion. That's doing a risk with it. The math was driven by the grouping rules. The math he was referring to was that if he brought these two together. He did it, but they didn't. Pardon me? If you did it, that would have happened. But they didn't bring it that way. And there were good reasons not to bring it together. So it seems to me you now admit we have enough before us. We don't need to send this back. The proffer is in there. We know what the judge should have done. And he made a fantastic mistake. I don't believe he did make a mistake. It's under Sanchez-Rodriguez. This is a valid departure theory. Everybody agreed that it's a valid departure theory. Everybody agreed. The government agreed. They appealed it. They didn't appeal on that point, that this was a the government never took the position that this was not a proper departure theory, nor did they ever take the position that this was not a correct calculation of the guidelines given. If you combine them. If you combine them. And you can do that under Sanchez-Rodriguez because the way the math he was referring to is the math that is provided by the grouping rule. If you group them, if you take them as happening at the same time. Right. They didn't happen at the same time. It's just staggering that he should have seen this somehow. I mean, I guess he was in another trial. He wasn't thinking about this one. Well, the second case, the Hastert case, was known to the government at the time the first one was. So what? Well, and they provided a they wanted to wrap this up in a global resolution. That's why you had the Queen for a Day letter before the first sentencing. They wanted to wrap this up. Judge Taylor knew that there was a possibility that it could all be wrapped up globally. And it hadn't it hadn't happened. It slipped away. This is a valid departure theory under the law. And nobody disputed that in the district court. It's a valid calculation. Assuming you apply that. And nobody disputed that in the district court. Investigation was properly grouped. That's that's the whole question we're wrestling with here. You're assuming it was government has obviously taken the position it was not. And unfortunately, they didn't get a chance to explain to the district court through the testimony of the case agent. Why the case wasn't ready for prosecution and why they shouldn't be paying for the delay. Well, that's two different questions. I mean, that doesn't. I don't think the government ever took the position that assuming they were brought together, it wouldn't be properly grouped. The government agreed to that right on the record in front of Judge Taylor. When they said Judge Taylor said, well, assuming we go down this road, it's a one month sentence. Correct. Correct. Everybody agreed to that. So the question is, is it a proper theory? And Judge Taylor found it was. I submit that it's supported by the law. And remand is unnecessary in this case. Okay. Thank you, Mr. Harris. Mr. Hoffman. Your Honor, very briefly on the ex post facto issue. I don't want to take too much time on this issue because we do believe that the government or that the district court abused its discretion in the sentence here. But there is no ex post facto problem here. This is a procedural change in the law. And it does not implicate the ex post facto clause. The defense claimed that this was a change in the law that was aimed at restricting downward departures. Well, it restricts all departures, Your Honor. And in the Alfaro case, the case cited by the defense in their 28-J letter, that was an upward departure, that the court was asked to review de novo. The court declined to make the decision as to whether the new Protect Act applies. But it was an upward departure that was being reviewed. Does it make a difference, Mr. Hoffer, that it wasn't a change in the maximum punishment that the statute provides? It's a change in where you fall within the range of zero to whatever the maximum penalty is. Precisely, Your Honor. The ex post facto clause is implicated where the government makes something criminal, which was previously innocent, or increases the punishment for a crime, or removes a defense that was previously available to the defense. None of that happened here. This is a procedural change. Your Honors, finally, I think the most telling part of the transcript is at the end of the court's colloquy with the parties, where the defense concedes that we don't know what the status of the Hastert Gardens prosecution was, and we don't know if they should have been, if it should have been brought at the same time as the Palos Verdes case. The court agreed. The court said, I don't know if they should have been necessarily. They were just starting their investigation. But the answer is, they could have been. In other words, the mere theoretical possibility that somehow if the government was omniscient, it could have brought these two prosecutions at the same time, gotten the Hastert Gardens prosecution ready in a matter of months. That was enough for the court to believe that this triggered the requirement of a downward departure. The court should have been. If you can't do that without listening to the facts and determining what the reason was for the delay. Exactly. The very thing that the court said it did not know. I don't know if they should have been brought together necessarily. That's exactly what the court should have looked into so that the court would know. And that's what the court didn't do and what we're asking this court to make it, the reason that we're asking this court to make it. Thank you very much. Thank you.
judges: Noonan, Tallman, Rawlinson